HOWARD TOWNSHIP BOARD OF TRUSTEES v WALDO

Docket No. 87148. Submitted January 6, 1987, at Grand Rapids.
Decided May 17, 1988.

Following the placement of a "single-wide" mobile home, twelve
feet wide with approximately six hundred square feet of floor
space, on a lot outside of a mobile home park, plaintiff, Board
of Trustees of Howard Township, brought an action in the Cass
Circuit Court against Richard O. and Neva J. Waldo, William
J. and Mary Lou Kalushka, and Essel and Annabelle Myers
alleging that the mobile home was a nuisance and seeking
enforcement of its zoning ordinances and abatement of the
nuisance by an order requiring the removal of the mobile home
and a permanent injunction. Defendants responded by challeng-
ing the constitutionality of the ordinances and claiming estop-
pel. Following a bench trial, the trial court, Michael E. Dodge,
J., granted the relief sought by the board. Defendants Waldo
and Kalushka appealed.

The Court of Appeals *held:*

1. The trial court properly found that Howard Township
Zoning Ordinance No. 88 was adopted to insure comparability
between mobile homes and site-built housing and that it had a
reasonable basis under the township's police power. The trial
court's holding that Ordinance No. 88 is constitutional is af-
firmed.

2. The inclusion in Howard Township Zoning Ordinance No.
89 of a provision requiring the consent of one hundred percent
of the property owners situated within five hundred feet of the
property before the board can consider an application for a
variance is not unlawful. However, the one hundred percent
consent requirement is not reasonable on its face and as it
applies to the defendants. The one hundred percent require-

REFERENCES

Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps §§ 13,
14.

Am Jur 2d, Zoning and Planning §§ 25-32, 62, 334-338.

Validity of zoning or building regulations restricting mobile homes
or trailers to established mobile home or trailer parks. 17
ALR4th 106.

ment of Ordinance No. 89 is unconstitutional and is therefore invalid and unenforceable.

3. Defendants did not demonstrate the requisite exceptional circumstances to justify an estoppel. The trial court properly found that an estoppel was not justified.

Affirmed in part and reversed in part.

1. ZONING — APPEAL.

The Court of Appeals reviews zoning cases de novo; considerable weight is given to the findings of the trial judge and those findings will not be disturbed on appeal unless the Court of Appeals would have arrived at a different result had the Court been in the trial judge's position.

2. ZONING — ORDINANCES — PRESUMPTION OF VALIDITY.

Zoning ordinances alleged to be unconstitutional come to the Court of Appeals clothed with every presumption of validity; the party attacking an ordinance has the burden to prove that it is unreasonable and arbitrary.

3. ZONING — CONSTITUTIONAL LAW — MOBILE HOMES.

Per se exclusion of mobile homes from all areas not designated as mobile-home parks has no reasonable basis under the police power and is therefore unconstitutional; a municipality, however, need not permit all mobile homes to be placed in all neighborhoods; a mobile home may be excluded if it fails to satisfy reasonable standards designed to assure favorable comparison of mobile homes with site-built housing which would be permitted on the site.

4. CONSTITUTIONAL LAW — ORDINANCES — CONSENT PROVISIONS.

An ordinance prohibitory in character but which permits the prohibition to be modified with the consent of the persons who are to be most affected by such modification is valid where not unreasonable; if such consent is used for no greater purpose than to waive a restriction which the legislative authority itself has created and in which creation it has made provision for waiver, such consent is generally regarded as being within constitutional limitations.

5. ZONING — CONSENT PROVISIONS — DELEGATION OF LEGISLATIVE POWER.

A zoning ordinance may be determined to be invalid where a consent provision contained therein, in effect, delegates the legislative power, originally given by the people to a legislative body, to a narrow segment of the community.

6. Zoning — Estoppel — Exceptional Circumstances.

    Zoning authorities generally will not be estopped from enforcing their ordinances absent exceptional circumstances; the central inquiry is whether the entire circumstances, viewed together, present compelling reasons for refusing a party's request for an injunction; casual private advise offered by township officials does not constitute exceptional circumstances.

*Magyar & Swisher, P.C.* (by *Thomas D. Swisher*), for plaintiff.

Legal Aid Bureau of Southwestern Michigan (by *Joel B. Garb*), for defendants.

Before: MacKenzie, P.J., and Weaver and J. E. Roberts,* JJ.

Per Curiam. This case involves a zoning dispute. Defendants Richard and Neva Waldo and Mary Lou and William Kalushka (hereinafter defendants), appeal as of right from an order requiring the removal of a "single-wide" mobile home situated on the Waldos' land for use by their daughter and son-in-law, the Kalushkas.

The evidence presented at trial revealed that the Waldos resided on two lots in the West Shore Park subdivision in Howard Township. In May, 1982, their daughter, Mary Lou, and her husband were living in a Quonset hut on the lots. Mary Lou suffered from a chronic lung disease requiring the use of special equipment. In order to renovate the hut for the equipment, the Waldos applied for an electrical wiring permit. Upon visiting the hut to investigate the application, Ethan Mittan, the township building inspector and zoning administrator, found the hut uninhabitable. The Waldos subsequently removed the hut.

---

   * Recorder's Court judge, sitting on the Court of Appeals by assignment.

In June, 1982, the Kalushkas purchased a specially equipped "single-wide" mobile home, twelve feet wide with approximately six hundred square feet of floor space, to live in on one of the lots. The parties' trial testimony differed on whether township officials consented to the placement of the mobile home on the lot. After the foundation for the mobile home was partially laid, Ethan Mittan ordered the work stopped because the Waldos did not have a permit. The Waldos were unable to acquire a permit because they did not comply with the requirements of Howard Township Zoning Ordinances Nos. 88 and 89.[1] Ordinance No. 88 established minimum size requirements for dwellings; Ordinance No. 89 established procedures and standards for placing mobile homes outside of mobile home parks.

On September 29, 1982, the Howard Township Board of Trustees filed suit against defendants, seeking enforcement of its ordinances and abatement of the nuisance by an order requiring the removal of the mobile home and a permanent injunction. Defendants responded by challenging the constitutionality of the ordinances and claiming estoppel. Following a bench trial, the trial court granted the relief sought by the board, because the mobile home was a nuisance per se under MCL 125.294; MSA 5.2963(24).

On appeal, defendants challenge the constitutionality of the ordinances and the trial court's rejection of their estoppel claim. Our review is de novo. *Bierman v Taymouth Twp,* 147 Mich App 499, 503; 383 NW2d 235 (1985), lv den 425 Mich 869 (1986). Considerable weight, however, is given

---

[1] The ordinances in effect when suit was filed were Nos. 17 and 33. Ordinance No. 88 partially amended and repealed No. 17; Ordinance No. 89 amended and repealed No. 33 in its entirety. The applicability of Ordinance Nos. 88 and 89 to this case is not disputed.

to the findings of the trial judge. Those findings will not be disturbed unless we would have arrived at a different result had we been in the trial judge's position. *Id.,* p 503.

The challenged section of Ordinance No. 88 states:

> Section 3.05 *Minimum Size of Dwellings.*
> Every one family dwelling hereafter erected shall have a minimum width throughout the entire length of the dwelling of 24 feet measured between the exterior part of the walls having the greatest length and shall contain not less than 840 sq. ft. of first floor space; every two family dwelling shall have the same width and shall contain not less than 1,680 sq. ft. of first floor space, which space for both dwellings shall be measured around the exterior of said dwelling each exclusive of an attached garage, open porches or other attached structures including breezeways and carports.

Defendants first claim that Ordinance No. 88 is unconstitutional because it operates to exclude all "single-wide" mobile homes outside mobile home parks from residential areas. The principles governing our review of the ordinance are set forth in *Kirk v Tyrone Twp,* 398 Mich 429, 439-440; 247 NW2d 848 (1976). The ordinance comes to us clothed with every presumption of validity. The party attacking the ordinance has the burden to prove that it is unreasonable and arbitrary. *Id.,* p 439.

Ordinance No. 88 applies to all "dwellings," including both site-built homes and mobile homes outside a mobile home park. Under the ordinance, a dwelling must have a minimum width of 24 feet and first floor space of not less than 840 square feet. Defendants' mobile home is approximately 12 feet wide with 600 square feet of floor space. Thus,

under the township's zoning scheme, defendants would have to obtain a hardship variance in order to locate their mobile home on their lot.

The circuit court found that Ordinance No. 88 was adopted to insure comparability between mobile homes and site-built housing and that it had a reasonable basis under the township's police power. We agree and affirm the court's holding that Ordinance No. 88 is constitutional.

In *Robinson Twp v Knoll,* 410 Mich 293; 302 NW2d 146 (1981), the Court held that "per se exclusion of mobile homes from all areas not designated as mobile-home parks has no reasonable basis under the police power, and is therefore unconstitutional." 410 Mich 310. However, a municipality need not permit all mobile homes to be placed in all neighborhoods. "A mobile home may be excluded if it fails to satisfy reasonable standards designed to assure favorable comparison of mobile homes with site-built housing which would be permitted on the site. . . ." *Id.*

In *Gackler Land Co, Inc v Yankee Springs Twp,* 427 Mich 562; 398 NW2d 393 (1986), a township zoning ordinance allowed mobile homes to be placed outside a mobile home park provided they fell within the definition of "dwelling." Dwelling was defined, inter alia, as a structure with at least 720 square feet and a 24-foot minimum width. The Supreme Court held that the ordinance did not unconstitutionally exclude all single-wide mobile homes from locations other than mobile home parks:

> We initially note that these regulations do not treat mobile homes materially different [sic] than site-built homes. We further find that the requirements, as stated, are either reasonable standards designed to assure favorable comparison of mobile

homes with site-built housing, or constitute a reasonable exercise of police power for the protection of the safety, health, morals, prosperity, comfort, convenience, and welfare of the public or a substantial part of the public. *Robinson Twp, supra,* 312. [*Gackler, supra,* p 570.]

In *Pauter v Comstock Twp,* 163 Mich App 670; 415 NW2d 232 (1987), the township's zoning ordinance required every "dwelling" to have a core area of living space of at least 20 feet by 20 feet (400 square feet). Pursuant to this ordinance, the plaintiff was denied a building permit to place a 14-foot by 70-foot (980 square feet) mobile home on his property. The circuit court found that the ordinance's core living space requirement was reasonably designed to assure favorable comparison between mobile homes and other dwellings outside mobile home parks and that the ordinance advanced the legitimate public concern of community welfare. The Court stated:

> On the authority of *Gackler,* we affirm. As in Yankee Springs Township, mobile homes are not treated materially differently than site-built homes in Comstock Township. All dwellings outside mobile home parks must meet the core living space requirement. Contrast *Tyrone Twp v Crouch,* 426 Mich 642; 397 NW2d 166 (1986). The core living space requirement is designed to assure favorable comparison of mobile homes with site-built homes. In light of the Supreme Court's decision in *Gackler,* we cannot conclude that the requirement is unreasonable. [*Pauter, supra,* p 673.]

In this case, as in *Gackler* and *Pauter,* Ordinance No. 88 does not treat mobile homes materially differently than site-built homes. Further, the record suggests that the ordinance was designed to assure comparability between mobile homes and

site-built housing. We therefore conclude that Ordinance No. 88 is constitutional and affirm that part of the trial court's ruling so holding.

Next, defendants argue that Ordinance No. 89 is unconstitutional because it requires the consent of one hundred percent of the property owners situated within five hundred feet of the property before the board can consider the variance application. The challenged section of Ordinance No. 89, § V, states:

> B. Mobile homes located outside of licensed mobile home parks as provided herein shall be subject to the following requirements:
>
> * * *
>
> 2. *Issuance of variance:* Application for variance to locate outside of a mobile home park must be accompanied by written consent of all adjoining property owners and property owners situated within 500 feet of the property on which the mobile home is to be located, but such approval shall not be necessary and may be waived by the township board where an application for a mobile home outside of a mobile home park is made in the case of the owner or occupant of the property's home being destroyed by fire. Upon filing of the proper application with the township clerk, the township clerk shall place the application for variance upon the agenda of the next scheduled township board meeting.

Again, the principles governing our review are set forth in *Kirk, supra,* pp 439-440.

In reviewing Ordinance No. 89, our first inquiry is how to characterize the ordinance. As discussed above, the consent requirement is the prerequisite to bringing the variance application before the board. The board then conducts a public hearing and, after making the requisite findings, may vary the terms of the ordinance. Required findings are:

1. the grant will not be injurious to the public health, safety, and general welfare;

2. the use or value of the land adjacent to the property included in the variance will not be adversely affected;

3. the need for the variance arises from some condition peculiar to the property involved that does not exist on similar property in the same district;

4. the strict application of the terms of this ordinance will constitute an unusual or unnecessary hardship as applied to the property or the owners and occupants in which the variance is sought;

5. that such variance is necessary for the preservation and enjoyment of substantial property rights possessed by other property in the same vicinity and district but is denied to the property in question because of the uniqueness of the property or because of an unusual and unique situation affecting the owner or occupant of the property. [Ordinance No. 89, § V(A).]

Defendants argue that the above section creates an "exception," rather than a "variance," to the zoning. For purposes of this appeal, we find no meaningful distinction. Exceptions, like variances, are only allowed in the particular circumstances specified in the zoning ordinance. 8 McQuillin, Municipal Corporations (3d ed), § 25.165, p 582. The zoning authority's decision on whether to grant or deny the exception or variance is an administrative function. *Id.,* § 25.165, p 583. The establishment of rules or standards to guide the zoning authority is essential to preserving the constitutionality of the zoning law. *Id.,* § 25.161, p 570. This administrative function should be distinguished from the legislative function of zoning itself. See *West v Portage,* 392 Mich 458; 221 NW2d 303 (1974), and *Schwartz v Flint,* 426 Mich

295; 395 NW2d 678 (1986). Zoning ordinances have been invalidated when a consent provision, in effect, delegates the legislative power, originally given by the people to a legislative body, to a narrow segment of the community. *City of East-lake v Forest City Enterprises, Inc,* 426 US 668, 677; 96 S Ct 2358; 49 L Ed 2d 132 (1976). However, not all consent provisions are invalid. As stated in *Cady v Detroit,* 289 Mich 499, 515; 286 NW 805 (1939):

> "A distinction is made between ordinances or regulations which leave the enactment of the law to individuals and ordinances or regulations prohibitory in character but which permit the prohibition to be modified with the consent of the persons who are to be most affected by such modification." 43 CJ, p 246.
>
> If such consent is used for no greater purpose than to waive a restriction which the legislative authority itself has created and in which creation it has made provision for waiver, such consent is generally regarded as being within constitutional limitations. *City of East Lansing v Smith,* 277 Mich 495 [269 NW 573 (1936)].

Here, the consent provision does not delegate legislative power to a narrow segment of the community. Rather, it merely requires a waiver as the first step in an administrative procedure authorized by the zoning ordinance. The inclusion of a consent requirement in Ordinance No. 89 is not unlawful.

Our conclusion reached above, however, does not obviate the need for reasonableness. Ordinance No. 89, § V, requires the board to make specific findings, including a finding of hardship. A hardship variance is the recognized means by which the basic constitutional property rights are recon-

ciled with the paramount right of government to protect, by zoning, the public health, safety, morals, and welfare of the community. 8 McQuillin, Municipal Corporations (3d ed), § 25.166, p 585, and see *Sun Oil Co v Madison Heights,* 41 Mich App 47, 55; 199 NW2d 525 (1972). We are persuaded that the one hundred percent consent requirement is not reasonable on its face and as it applies to defendants. Requiring one hundred percent consent is too stringent, particularly when testimony indicates, as in this case, that not all property owners were available. Requiring the consent of all property owners within five hundred feet of the property unreasonably subjects the applicant to the very real possibility of being unable to reach all property owners, as well as the possibility of a single property owner whimsically deciding to refuse consent. We therefore conclude that the one hundred percent requirement in Ordinance No. 89 is unconstitutional. We limit our relief to declaring the consent requirement invalid and unenforceable.

Lastly, defendants argue that the board should be estopped from enforcing the zoning ordinance. We disagree.

An equitable estoppel arises where

> (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts. . . . [*Cook v Grand River Hydroelectric Power Co, Inc,* 131 Mich App 821, 828; 346 NW2d 881 (1984).]

The general rule is that zoning authorities will not be estopped from enforcing their ordinances absent exceptional circumstances. *Pittsfield Twp v Mal-*

*colm,* 375 Mich 135, 146; 134 NW2d 166 (1965). The central inquiry is whether the entire circumstances, viewed together, present compelling reasons for refusing a party's request for an injunction. *Id.,* p 148, and see *Grand Haven Twp v Brummel,* 87 Mich App 442; 274 NW2d 814 (1978). Casual private advice offered by township officials does not constitute exceptional circumstances. *White Lake Twp v Amos,* 371 Mich 693, 698-699; 124 NW2d 803 (1963).

Likewise, in the present case, the defendants allegedly received approval for the mobile home in private conversations with township officials. From our review of the record, as a whole, we are not persuaded that defendants demonstrated the requisite exceptional circumstances to justify an estoppel. Accordingly, we affirm the trial court's finding that an estoppel was not justified in this case.

Affirmed in part and reversed in part.